UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
  PHILLIP BERMUDEZ,

                Plaintiff,

        - against –

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

18-cv-0037 (BMC)

**COGAN, District Judge.**

    1.     Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing and a supplemental hearing before an Administrative Law Judge, that he is not disabled as defined under the Social Security Act and its regulations for the purpose of receiving disability income benefits. Plaintiff's problems stem from a serious automobile accident on December 15, 2013. He was filling out paperwork in a car dealership when an out of control car came bursting through the wall, impacting and injuring him.

    2.     The ALJ found that plaintiff had severe impairments of both shoulders including arthroscopic surgery; degenerative disc disease; meniscus tears in his left knee, also addressed by arthroscopic surgery; post-traumatic stress disorder; and depression. Notwithstanding these impairments, the ALJ found that plaintiff could perform sedentary work with significant physical and mental restrictions, including a limitation to simple, routine work tasks. In this review proceeding, only plaintiff's mental limitations are at

issue, and the only relevant question is whether plaintiff's limited ability to tolerate stress leaves him with sufficient residual functional capacity to perform simple sedentary work.

3. Plaintiff contends that the ALJ gave too much weight to the opinion of a testifying (non-examining) medical expert, psychiatrist/neurologist Dr. Carlos Justino Berrios, and not enough weight to plaintiff's treating psychologists, Drs. Amalea Seeling and Howard Rombon.[1] Plaintiff relies on those decisions noting the special care that must be taken in applying the medical opinion of a doctor who has never examined the claimant. See, e.g., Pratts v. Chater, 94 F.3d 34, 38 (2d Cir. 1996) (citing Hidalgo v. Bowen, 822 F.2d 294, 298 (2d Cir. 1987)). Plaintiff also notes that even the Social Security Administration's two consulting psychologists, Drs. Ashley Knoll and Ashley Dolan, found that plaintiff has "marked" limitations in appropriately dealing with stress.

4. The Commissioner relies in part on the timing of the medical reports. She argues that the evidence tending towards a finding that a disability occurred less than a year after the automobile accident, including the reports of consultants Drs. Knolls and Dolan. In contrast, the Commissioner asserts, the later-generated reports for the most part suggested that plaintiff could do simple, routine tasks in a sedentary job.

5. This is not a completely adequate answer as, in fact, the later reports do not squarely support a finding of non-disability. As late as July 2015, Dr. Dolan diagnosed plaintiff with "psychiatric problems [that] may significantly interfere with the claimant's ability to function on a daily basis" and that he still had "marked" limitations

---

[1] The Commissioner's point that Dr. Rombon should not be considered a treating physician because he merely signed off on Dr. Seeling's evaluations is accurate, but not terribly important. The two psychologists practice together. There are extensive treatment notes from Dr. Seeling, and she signed the same medical source statements as Dr. Rombon's partner. They should be viewed as a single treating physician.

in dealing with stress. And Drs. Seeling and Rombon's medical source statements were dated in June 2014. Moreover, plaintiff had an anxiety attack and had to go the emergency room in January 2016.

6. Nevertheless, there is at least a scintilla of evidence in the record that tends to support the ALJ's conclusion, including some portions of Dr. Dolan's 2015 report. For example, Dr. Dolan found plaintiff able to perform both simple and complex tasks. In addition, one of the workers' compensation psychologists, Dr. Michael Rosenfeld, who examined plaintiff in May 2015, found that that plaintiff had good memory, good concentration, unimpaired attention, good judgment, and fair insight, concluding that plaintiff "is able to perform his usual daily activities, including accessing or utilizing public or private transportation."

7. The thrust of plaintiff's argument is that if the ALJ is going to adopt wholesale a non-examining expert's opinion as the primary basis for the ALJ's conclusion (as the ALJ did here), then the medical expert must at least explain (and, implicitly, the ALJ must inquire of the expert if he does not), why the very limited weight that the expert is giving the evidence pointing towards disability is not persuasive. Plaintiff's point is that Dr. Berrios's testimony did not even reference most of the evidence suggesting the need for greater limitations, and the ALJ therefore should not have given Dr. Berrios' opinion the significant weight that he did.

8. I agree with plaintiff's statement of the general principle that if the ALJ is going to rely primarily on a medical expert, the expert's testimony should be thorough. The question is whether Dr. Berrios's opinion presented a naked or near-naked conclusion that plaintiff can do sedentary work with restrictions, or whether, in contrast,

3

he adequately addressed the evidence in the record that pointed towards disability. An examination of Dr. Berrios' testimony, summarized below, convinces me that his medical opinion was superficial and not sufficient to overcome the treating physician rule, at least without further justification for doing so from the ALJ.

9. After qualifying Dr. Berrios, the ALJ made a general inquiry of Dr. Berrios as to plaintiff's psychiatric condition. Dr. Berrios responded that plaintiff had PTSD and depression NOS, and that the most recent mental status report (Dr. Rosenfeld's of May 2015) found him alert, oriented, without psychosis or hallucinations, and with "reserved memory, attention and concentration," reflecting a "benign" mental status. Dr. Berrios was correct, in my view, that Dr. Rosenfeld's report overall supported a conclusion of non-disability, although it should be noted that Dr. Rosenfeld was applying the different standard for worker's compensation as opposed to social security claims.

10. Dr. Berrios then generally referenced plaintiff's treatment for depression and concentration problems. Most significantly, he agreed with the ALJ's leading question that "except for a short time in 2013, [plaintiff] basically had normal mental status examinations."

11. Dr. Berrios next opined that plaintiff did not meet or equal the Listings for psychiatric impairments, although he had moderate impairments in understanding, remembering and applying information, interacting with people, and concentrating, persisting, and maintaining pace.

12. As to plaintiff's RFC, Dr. Berrios concluded that plaintiff "could do simple, routine tasks. He could remember and execute simple one or two-step

instructions. He would be able to maintain attention, concentration, persistence and pace. He would be able to ask simple questions to request assistance and respond appropriately to changes in the setting." He also concluded that plaintiff would be able to work with the public and have no trouble working with coworkers or supervisors.

13. However, when the ALJ generally inquired as to the basis of Dr. Berrios's opinion, Dr. Berrios was way off on the dates. Dr. Berrios thought that plaintiff's negative medical source statements were from 2003 and 2004. The ALJ had to correct him, and Dr. Berrios acknowledged that the negative reports were actually 10 years later than he thought. It was only after that correction that the ALJ was able to extract an affirmative answer to his leading question.

14. The ALJ's question was unfair, as it not only suggested the answer to Dr. Berrios, but suggested it strongly, and the bulk of the Commissioner's argument in this review proceeding is premised on the ALJ's theory. More importantly, both the question and Dr. Berrios's affirmative answer were flatly inconsistent with the record. There was only a little that could be called "normal" about the medical source statements from plaintiff's treating psychologists (Drs. Seeling and Rombon) in June of 2014 (although the Commissioner notes the two or three exceptional findings that were indeed normal). They both showed his psychological impairment as extreme. He had abysmal scores on the Beck Depression Inventory, the Beck Hopelessness Scale, and the Beck Anxiety Inventory. He was in the 99th percentile on the Global Severity Index. In addition, as noted above, it was in July 2015 that the consulting psychologist, Dr. Dolan, gave an extremely negative evaluation. Thus, I do not see why the ALJ thought that everything

5

was fine except for a few months in 2013, and it is even more mystifying why Dr. Berrios adopted the ALJ's suggestion.

15. This might be explained by the troubling fact that Dr. Berrios had not been provided with plaintiff's full medical record prior to testifying about plaintiff's RFC, which only came out on cross-examination by plaintiff's attorney. Included among the records that Dr. Berrios did not review, as noted above, was an emergency room visit for an anxiety attack that plaintiff had quite late in the application process – in January 2016. Plaintiff's testimony was that these crippling attacks overwhelmed him two or three times per month, although he did not seek further treatment of them because of insurance limitations.

16. Nor was Dr. Berrios provided with any of the records showing plaintiff's physical injuries. In other cases, this omission may not have been material since Dr. Berrios was only opining on plaintiff's mental state. But here, the medical source statements from Drs. Seeling and Rombon made it clear that a significant source of plaintiff's inability to tolerate stress was not only the accident itself, but the chronic pain that plaintiff had sustained, which left him, consistent with his PTSD diagnosis, in constant fear that the pain would continue or worsen.

17. The ALJ recognized that it was extraordinary that Dr. Berrios had only been given part of the medical record: "[T]his is the first time I've ever been told that a doctor did not get [exhibit] 1F through whatever. I can honestly say this is the first time. This is shocking to me, absolutely shocking." She attempted to remedy the situation, first, by inquiring of plaintiff's attorney whether he wanted an adjournment, which plaintiff's attorney – given the preciousness of hearing dates – declined with great

reluctance. The ALJ then took a recess to let Dr. Berrios review the entire record. When the ALJ resumed Dr. Berrios's testimony, Dr. Berrios testified that the records had not altered his opinion of plaintiff's impairment.

18. Whether or not Dr. Berrios had sufficient time to review the entire record during the recess is not the point. More important is that before the incomplete review was even discovered, Dr. Berrios had committed himself and testified to a conclusion without seeing at least some of the records that may have altered that conclusion. I think it is asking too much for a doctor who has already locked himself in to a sworn medical opinion to come back and say, "these additional records have changed my mind." It is certainly possible that this could have happened, but the pre-determination of plaintiff's condition without adequate review of the entire record does not encourage confidence in Dr. Berrios's maintenance of his opinion. The matter is made worse because the ALJ had led Dr. Berrios to his conclusion based on an inaccurate question in the first place.

19. Plaintiff's motion for judgment on the pleadings is therefore granted, and the Commissioner's cross-motion is denied. The case is remanded for an additional hearing, at which the ALJ shall obtain testimony from a medical expert psychologist or psychiatrist other than Dr. Berrios who shall have reviewed the entire record prior to the hearing. The ALJ shall then consider the record in light of that testimony with specific attention to the application of the treating physician rule.

**SO ORDERED.**

                                              U.S.D.J.

Dated: Brooklyn, New York
       February 1, 2019